**STATE OF VERMONT**

**ENVIRONMENTAL COURT**

| | | |
|---|---|---|
| Town of Goshen, Plaintiff, | } | |
| | } | |
| v | } | Docket No. 43-3-98 Vtec |
| | } | |
| Bernadette Gionet and Albert | } | |
| Gionet, Defendants. | } | |

Decision and Order on Post-Judgment Motions

In 1998, the Town of Goshen brought an enforcement action regarding the inoperable vehicles and debris or salvaged materials stored on Defendants= property. Albert Gionet appeared and represented himself and his wife Bernadette Gionet; the Town of Goshen is represented by F. Rendol Barlow, Esq. After an evidentiary hearing, the Court issued a final order in this matter on January 5, 1999. An initial series of requests to amend that order, regarding the definition of the > winter= season and regarding the schedule for making payments under that order, were resolved in 1999 and 2000.

Essentially three matters are now pending before the Court: the Town= s motion for enforcement of the January 1999 order, Defendants= motion to amend that order, and Defendants= motion for > relief from unfair prosecution,= which asserts a defense of selective enforcement to the Town= s efforts to enforce the January 1999 order.

Defendants also had filed an independent suit against the Town in Addison Superior Court, for enforcing its bylaws in a manner contrary to the U.S. Constitution. The Town removed that suit to the United States District Court for the District of Vermont. On December 10, 2001, the District Court dismissed the complaint, with prejudice, for three reasons: that Defendants had failed to set forth the elements of a claim for selective enforcement, that Defendants had failed to allege that the claimed constitutional violation arose from a policy or official decision adopted by the Town, and for reasons of federal abstention due to the pending claim for selective enforcement in this Court. The Town has moved to dismiss Defendants= > motion for relief from unfair prosecution= based on this dismissal by the federal court.

The Environmental Court had held an evidentiary hearing on all pending motions on May 9, 2001. The hearing was completed regarding the Town= s motion for enforcement of the January 1999 order and regarding Defendants= motion to amend that order. Regarding Defendants= motion for relief from unfair enforcement, the Court explained on the record that a selective enforcement claim first had to make out a threshold showing of the improper motivation for the alleged selective treatment, before the Court would take evidence on the claim of selective enforcement. The evidentiary hearing was completed on the threshold showing. If Defendants have made out that threshold showing, then the Court would have to schedule additional hearing time for Defendants to present evidence on the alleged selective treatment.

Defendants= Motion to Amend January 1999 Order

The January 1999 Order entered judgment in favor of the Town, imposed a small monetary penalty, and granted injunctive relief, including the following two paragraphs that Defendants now request to be amended, related to the phrases in bold:

5. As soon as practicable but not later than May 15, 1999, Defendants shall remove from the property or place indoors in a storage shed all remaining automotive engines or other large automotive parts being kept for use on or in the vehicles which Defendants are permitted to maintain on the property under this Order. On the property, Defendants shall not collect, wreck, dismantle, store, salvage or sell machinery parts **or vehicles not in running condition**. This requirement does not prevent Defendants from selling or offering for sale their personal property, including vehicles, provided that the sales do not constitute a business or home occupation, and provided that any signs or advertising complies with the requirements of the Zoning Bylaws.

7. Upon reasonable advance request and during normal working hours, Defendants shall allow the Town's representatives to inspect the outdoor areas on the property, and the **interior of the garage and storage trailer**, to determine compliance with this order and the Zoning Bylaws.

The Town merely argues in response that Defendants are bound by the January 1999 order as they did not appeal, and did not move to amend it on these grounds until June of 2000 (renewed in March of 2001), well beyond the time provided in V.R.C.P. 59 or 60.

Because Defendants are unrepresented, we have reviewed the language of these two sections of the January 1999 order, even though the order became final and enforceable (24 V.S.A. ' 4470(c)) and their filing to amend it was untimely. Both sections which Defendants seek to have amended are required by the definition of the term A junk yard@ in ' 130 of the Zoning Bylaw as A <u>Land or building</u> used for the collecting, storage or sale of waste paper, rags, scrap metal or discarded material; or for the collecting, wrecking, dismantling, storage, salvaging and sale of machinery parts or <u>vehicles not in running condition</u>.@

Because Defendants do not have a permit for operating a junk yard as it is defined in the Town=s zoning bylaw, the Town may reasonably examine the interior of the garage and the storage trailer, but only to determine whether they are being used in compliance with the January 1999 order and the Zoning Bylaws. Similarly, the limitation in paragraph 5 is entirely due to the inclusion of A vehicles not in running condition@ in the Town=s definition of junk yard. Defendants= motion to alter the order to eliminate these requirements is DENIED.

<u>Defendants= Motion for Relief from Unfair Prosecution</u>

The Town has moved to dismiss Defendants= motion for relief from unfair prosecution because of the federal court decision. That motion is DENIED, as Defendants are entitled to an independent ruling from this Court as to whether they have met the threshold showing for a claim of selective enforcement, all the more so since the federal court abstained because Defendants had access to relief in this Court=s proceedings.

However, on the evidence presented, we reach the same conclusion as did the federal court: Defendants have not made out the threshold showing that the Town has brought this prosecution for a reason rising to the level of an improper motive under the constitution. No allegation of racial or religious discrimination is made, nor any allegation that Defendants have been inhibited from or punished for exercising their constitutional rights, such as the right to free speech. Defendants rather claim that the Town has brought the action out of malicious or bad faith intent to injure them. However, Defendants evidence does not make out such a claim. The violation has been proven; therefore Defendants cannot argue that the Town=s action was brought in bad faith. A town may bring an enforcement action with the intent to make an example of a violation that is particularly visible or of particularly long standing, even if it is not the worst violation in town and even if actions have not been brought or not yet been brought against other violators.

Because we rule that Defendants have not made out their threshold showing for selective enforcement, Defendants various motions for > relief from unfair prosecution@ are DENIED and the Court need not schedule a hearing to take additional evidence on the issue.

Town= s Motion for Enforcement of January 1999 Order

Defendants= motion for an additional continuance to respond to the Town= s memoranda on enforcement is again denied. No additional evidence would in any event be taken; all that the Court was expecting to receive from the parties were their arguments on the merits of the motions for which evidence was taken in May 2001, and which was extended for Defendants to order and then to receive and review the transcript they had ordered of that motion hearing. Although the transcripts had been produced in July 2001, the parties= arguments were not filed until the Court had issued a scheduling order on November 21, 2001, setting December 13 and 20, 2001 as the dates for the parties arguments and responses to be filed. The Court then granted Defendants= request for more time, giving Defendants two weeks instead of one week to file their responses.

Defendants appear to be arguing that their property does not look bad, that therefore it is not really a junkyard, and that therefore their property should not be analyzed according to the ordinance= s definition of junkyard. If Defendants continue to disagree with the effect of the zoning ordinance on their property, they are free to seek an amendment of that ordinance. The Court cannot rewrite the zoning ordinance; it can only interpret and apply it. It is that ordinance that was applied in this case, resulting in the January 1999 final order. Defendants cannot relitigate that order here; the present proceeding is to determine whether they have complied with that order.

The Town argues that only two of Defendants= sixteen vehicles are inspected, although many more are registered. The evidence as shown on Town= s Exhibit 108 reflected that seven of the sixteen vehicles (vehicles 8, 9, 10, 11, 14, 15, 16) would not start when attached to a battery and supplied with gasoline directly to the carburetor. These vehicles are evidently not A in running condition,@ although it is possible that they could be brought into running condition with additional parts and repair work. One of the vehicles not A in running condition,@ the 1973 gold Duster (vehicle 14), is a priority hobby restoration project of Defendant= s, which he has been intending to work on for several years. If that vehicle is stored inside during that restoration, it meets the requirements of the January 1999 Order.

Of the remaining nine vehicles, two (vehicles 6 and 7 in Exhibit 108) are insured, inspected and operated regularly. The parties do not dispute that these are A in running condition.@

The parties do dispute whether the remaining seven vehicles (vehicles 1, 2, 3, 4, 5, 12 and 13), which were capable of being started but were not inspected, were in running condition. The Town argues that the test for A in running condition@ should be that the vehicles pass Vermont inspection, both because that is an easily verifiable test, and because the vehicles must be registered and all registered vehicles must pass an annual inspection. The Town also argues that, at a minimum, A in running condition@ should mean roadworthy. Defendant appears to believe that A in running condition@ should be interpreted as that the engine will operate. Defendant also argues that the A in running condition@ test should not be applied to his vehicles, because it only appears in the zoning ordinance= s definition of A junk yard@ and he continues to assert that he is not operating a junk yard.

As previously stated, it is the zoning ordinance which imposes the requirement that Defendants not collect, wreck, dismantle, store, salvage or sell machinery parts or vehicles not in running condition. We must impose the ordinary meaning of the phrase A in running condition,@ as the ordinance imposes no requirement that the vehicles be inspected. However, the requirement is that the vehicle be A in running condition,@ not merely that the engine is in running condition.

The vehicle must be physically capable of being operated as a vehicle, that is, to move down a roadway under the power of its engine, transmitting the engine= s power to the wheels.

The Town is correct that it would be easier to monitor and enforce a requirement that the vehicles be inspected, as such a requirement would minimize the need to inspect Defendants= property and to have Defendant demonstrate that any particular vehicle meets the A in running condition@ standard. Nevertheless, that is the standard in the ordinance and that is the standard we must apply. Under the 1999 Order, if Defendant wants to store more vehicles not currently in running condition than fit in his existing garage spaces, for his hobby use, he would at a minimum have to build some sort of shed or enclosed structure in which to store them.

Accordingly, it is hereby ORDERED and ADJUDGED that Defendants are in violation of the January 1999 court order in the present case, in that they are storing motor vehicles outdoors on the property that are not in running condition as defined above.

On or before May 1, 2002, Defendants shall demonstrate to the Town that any motor vehicle stored outside on the property is in running condition, either by showing that the vehicle bears a current valid inspection sticker from the state in which it is registered, or by demonstrating its running condition by driving it from one point to another under its own power.

On or before May 22, 2002, Defendant shall remove from outdoor storage on the property any motor vehicles that are not in running condition, either by moving them inside a building or other enclosed structure, or by removing them from the property. As of and after May 22, 2002, Defendant shall pay a penalty to the Town of $25 **per day** for **each** motor vehicle not in running condition that is stored outside on Defendant= s property.

In addition, pursuant to V.R.C.P. 70, if Defendant continues after June 21, 2002 to maintain outdoors on the property any motor vehicles that are not in running condition, the Town, after serving on Defendant 14 days notice and opportunity to cure, may remove and dispose of such vehicles and may proceed under V.R.C.P. 70 against Defendant to recover the costs of so doing.

The January 5, 1999 court order in this matter remains in full force and effect except as modified by the present order.

Dated at Barre, Vermont, this 4th day of March, 2001.


_____
Merideth Wright
Environmental Judge